RECEIVED
Clerk's Office
USDC, Mass.
Date 12-20-04
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BRIAN CRAWFORD,**<br>**Plaintiff,**<br><br>v.<br><br>**ARBELLA SERVICE COMPANY,**<br>**Defendant.** | **CIVIL ACTION NO.**<br>**04-11621JLT** |

**ARBELLA SERVICE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Defendant Arbella Service Company ("Arbella") hereby opposes Plaintiff's Motion for Leave to File Second Amended Complaint. Plaintiff seeks to amend his Complaint to add a count for damages under M.G.L. c. 149, §§ 148 and 150 (the "Wage Payment Law") based solely on Arbella's failure to pay Plaintiff overtime as allegedly required by M.G.L. c. 151 § 1A (the "Overtime Law"). Plaintiff has not alleged any facts that would state a claim under the Wage Payment Law. Instead, Plaintiff's state law remedy for the alleged failure to pay overtime is under the Overtime Law, which is already the basis of the existing Count II of the original Complaint. Because Plaintiff cannot, as a matter of law, state a claim under the Wage Payment Law, and insofar as permitting Plaintiff leave to amend the Complaint would be futile, Plaintiff's Motion For Leave To File Second Amended Complaint should be denied.

The Wage Payment Law promises employees that they will receive their earned wages within six days of the end of the pay period in which the wages were earned. In

Plaintiff's case, it would apply if he had not received the salary he was promised by Arbella within the time period provided by the Wage Payment Law. The dispute between the parties is over the extent to which Plaintiff may be entitled to overtime pay -- there is no dispute that Plaintiff was paid his regular salary in a timely fashion. Accordingly, there is no violation of the Wage Payment Law.

Plaintiff seeks to supplement his alleged right to recover for failure to pay overtime that he claims he should have received under the Overtime Law by adding an alternative claim under the Wage Payment Law. In setting forth this claim without alleging any new facts, Plaintiff seeks to improperly use the Wage Payment Law to extend the statute of limitations beyond that provided by the Overtime Law and to increase the remedies already available to him under that law should he prove a violation. Such a result is not consistent with the plain language of the statutes, the legislative purpose of the statutes, or the basic doctrines of statutory construction. Plaintiff's remedies for the wrongs he alleges are set forth in his First Amended Complaint. There simply is no basis for amending the Complaint to add a new count under a statute that does not apply.

## FACTS

On September 15, 2004, Plaintiff filed his First Amended Complaint ("Complaint"), which alleges that Arbella failed to pay Plaintiff, and all other persons employed by Arbella as ADAs, time and one-half their regular rates of pay for all hours worked in excess of forty hours per week ("overtime"). The Complaint alleges that Arbella's failure to pay overtime stems from its purported policy of classifying ADAs as exempt from the provisions of the applicable federal and state minimum wage and

overtime laws, while at the same time assigning ADAs duties inconsistent with exempt status. Count I seeks damages under the Fair Labor Standards Act, 29 U.S.C. §§ 207(a) and 216(b), in the amount of all unpaid overtime compensation, plus an additional equal amount as liquidated damages. Count II seeks damages under the analogous Massachusetts Statute, M.G.L. c. 151, §§ 1A and 1B, for failure to pay Plaintiff time and one-half his regular hourly rates for hours worked in excess of 40 hours during a workweek.

Plaintiff now seeks leave to amend his Complaint to add a count under the Massachusetts Wage Payment Law, without alleging a single new fact or indeed any facts that would implicate that law.[1/] More specifically, Plaintiff alleges in his Complaint that he was paid a salary for his weekday work. (Second Amended Complaint ¶ 19.) He does not allege that he did not receive this salary within six days of the end of the pay period. He does not allege that Arbella promised to pay him overtime but then failed to pay him that overtime. He merely alleges that because, in his belief, Arbella should have paid him as a non-exempt employee instead of as an exempt salaried employee, it violated the Wage Payment Law in addition to the Overtime Law by failing to pay *only* overtime it never promised to pay him in the first place. (Second Amended Complaint, ¶ 58.)

---

[1/]    Plaintiff states that the delay in setting forth this claim was due to the wait to obtain the necessary right to sue letter from the Office of the Attorney General. Notably, in issuing the right to sue letter, the Attorney General did not state any opinion on the validity of Plaintiff's claim. (Plaintiff's Motion for Leave to File Second Amend Amended Complaint, Exh. 2.)

## ARGUMENT

A.     **Standard of Law**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend its complaint "once as a matter of course at any time before a responsive pleading is served . . . . Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party. . ." Fed. R. Civ. P. 15(a). Arbella served an answer to Plaintiff's Amended Complaint on September 17, 2004, and it does not consent to this amendment. Therefore, Plaintiff may only amend with leave of Court.

Although motions for leave are anticipated to be liberally granted, see Johnston v. Holiday Inns, Inc., 595 F.2d 890, 896 (1st Cir. 1979), the Court has discretion to deny a motion for leave if it finds that, as a matter of law, the amendment would be futile. See Demars v. General Dynamics Corp., 779 F.2d 95, 99 (1st Cir. 1985) (citing Jackson v. Salon, 614 F.2d 15, 17 (1st Cir.1980); Crews v. Memorex Corp., 588 F.Supp. 27, 28 (D.Mass.1984); 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1487 at 432-33 (1971)). Indeed, leave to amend should be denied if the proposed change is clearly frivolous or advances a claim or defense that is legally insufficient on its face. Id. Likewise, the court should deny Plaintiff's Motion for Leave if the proposed amendment cannot withstand a motion to dismiss. See, e.g., Glick v. Koenig, 766 F.2d 265, 269 (7th Cir. 1985) ("The liberal amendment rules under Rule 15(a) do not require the courts to engage in futile gestures."); Bruno Wine & Spirits, Inc. v. Guimarra Vineyards, 573 F.Supp. 337, 341 (D.C.Wis.1983) (finding that when an amended pleading could be defeated by a motion to dismiss, leave to amend should be denied since it would be a futile gesture); Collyard v. Washington Capitals, 477 F.Supp. 1247, 1249

(D.C.Minn.1979) (same). See also Valdan Sportswear v. Montgomery Ward & Co., 591 F.Supp. 1188, 1190 (D.C.N.Y 1984) (holding that leave should be denied when the amendment embodies plainly defective claims).

**B.    Plaintiff's New Count Could Not Withstand A Motion To Dismiss.**

Plaintiff's Second Amended Complaint advances a claim that is legally insufficient on its face and could not withstand a motion to dismiss. The Wage Payment Law simply does not provide a remedy for the wrong alleged by Plaintiff. Instead, Plaintiff's sole remedy for the alleged misclassification of an employee as exempt from the Overtime Law and resulting failure to pay overtime is under the Overtime Law itself.

Both the Wage Payment Law and the Overtime Law fall under Title XXI of the Massachusetts General Laws, the Labor and Industries Title of the General Laws. These laws, and the others contained under that Title are meant to protect employee's rights within the employment relationship. When construing related statutes such as the Overtime Law and the Wage Payment Law, both designed to protect an employee's right to wages, the doctrine of *in pari material* applies. This doctrine holds that where two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose. See, e.g., Board of Education v. Assessor of Worcester, 368 Mass. 511 513-14, 333 N.E.2d 450, 452 (1975).

Even more, under Plaintiff's analysis, in fact, the two <u>must</u> work together. Plaintiff's Wage Payment Law claim is based entirely on the premise that he was misclassified as exempt from the Overtime Law and that as a result of this misclassification, Arbella paid Plaintiff a salary that did not include overtime for hours worked in excess of 40 in a workweek. Thus, under Plaintiff's claim, both state law

5

claims hinge entirely on a finding that the Plaintiff violated the Overtime Law. In his analysis, if he proves a violation of the Overtime Law, he automatically has proven a violation of the Wage Payment Law. Therefore, to apply Plaintiff's analysis, the Court must construe the two laws together and therefore must also apply the doctrine of *in pari material* when interpreting the statutes. On close examination, it is clear that this doctrine mandates the conclusion that the Wage Payment Law does not apply to the allegations set forth in Plaintiff's Second Amended Complaint. An explanation of the legislative purposes and the remedy structures of the statutes may be helpful in demonstrating why this is true.

The Overtime Law specifies who should receive overtime pay for hours worked in excess of 40 in a workweek. M.G.L. c. 151 § 1A. If an employer fails to pay overtime to an employee protected by that law, the Overtime Law provides its own remedies, including payment of unpaid overtime and up to treble damages for willful violations. M.G.L. c. 151 § 1B.[2] It contains a two-year statute of limitations. M.G.L. c. 151 § 20A.

The Wage Payment Law specifies <u>when</u> payment due to an employee for work performed must be received. If an employee does not receive the wages he earned within six (6) days of the end of the pay period, the Wage Payment Law provides its own set of remedies, including treble damages.[3] The Wage Payment Law contains a three-year

---

[2]   "In addition, if any person is paid by an employer less than such overtime rate of compensation, such person may recover in a civil action three times the full amount of such overtime rate of compensation less any amount actually paid to him or her by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between such person and the employer to work for less than such overtime rate of compensation shall be no defense to such action." M.G.L. c. 151 § 1B.

[3]   "Any employee claiming to be aggrieved by a violation of section 148, 148A, 148B, 150C, 152, 152A or 159C or section 19 of chapter 151 may, at the expiration of

statute of limitations, in contrast to the shorter statute of limitations under the Overtime Law. M.G.L. c. 149 § 150. Also, in contrast to the Overtime Law, an employee aggrieved under the Wage Payment Law must seek redress or a right to sue letter from the Attorney General before seeking relief in Court. M.G.L. c. 149 § 150.

The Wage Payment Law is not meant to provide an additional remedy for individuals who have been misclassified under the Overtime Law and thus were not promised overtime. The Wage Payment Law simply ensures that employers do not unreasonably delay payment of wages that are due according to the arrangement between the employee and the employer. See American Mut. Liability Ins. Co. v. Commissioner of Lab. and Indus., 340 Mass. 144, 147 (1959) ("Doubtless the legislation in its early form was enacted primarily to prevent unreasonable detention of wages"); Cumpata v. Blue Cross Blue Shield of Mass., Inc., 113 F.Supp.2d 164, 167 (D.Mass. 2000) (The state was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages'); Parow v. Howard, 17 Mass.L.Rptr. 149, 151, 2003 WL 23163114 (Mass. Super. Nov. 12, 2003) ("The Legislature enacted Section 148 to limit 'the interval between the completion of a workweek and the payday on which the wages earned in that week'") (copy attached as Exhibit A). In other words, the Wage Payment Law is meant to ensure that employees are paid the wages they expect to be paid

---

ninety days after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing, and within three years of such violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of the litigation and reasonable attorney fees." M.G.L. c. 149 § 150.

7

within a reasonable time after they are earned. Parow, 17 Mass.L.Rptr. at 151 ("[M.G.L. c. 149 § 148] sought primarily to prevent unreasonable detention of wages . . . The cure which the Legislature prescribed for the evil noted was to require regular and frequent payment . . . Payment long in arrears could mean . . . dissipation on payday of a large part of the accumulation sums by irresponsible employees with consequent adverse effect on family and community.  The statutory remedy met this possible evil.") (internal quotations deleted), citing American Mutual, 340 Mass. at 145.

Plaintiff has alleged that he received a salary while employed at Arbella.  (Second Amended Complaint ¶ 19.)  He does not allege that he did not receive the salary that Arbella promised to pay him within the time set forth in the statute.  He does not allege that Arbella promised to pay him overtime and then failed to do so.  He merely alleges that under the Overtime Law, Arbella should have treated him as a non-exempt employee and paid him overtime.  This allegation does not create a claim under the Wage Payment Law.  Plaintiff received the salary he expected to receive within the time frame mandated by the Wage Payment Law.  If Arbella did in fact misclassify him as exempt from the Overtime Law, his remedy is under that statute, not the Wage Payment Law.

It is particularly important that the Overtime Law does in fact provide its own remedy for violations.  It is clear under these circumstances that the Legislature intended an employee who is not paid overtime to have a full remedy under the Overtime Law.  Indeed, the Overtime Law's remedy provisions provide for civil and criminal penalties, a civil action right, and damages of up to treble damages over the course of the two-year statute of limitations.  M.G.L. c. 151 §§ 1B, 20A.

The Legislature clearly contemplated the Overtime Law and the Wage Payment Law together. The civil and criminal penalties of the Overtime Law, in fact, are contained in the same section as the criminal and civil penalties available under the Wage Payment Law. See M.G.L. c. 151 § 1B. ("Any employer or the officer or agent of any corporation who pays or agrees to pay to any employee less than the overtime rate of compensation required by section one A shall have violated this section and shall be punished or shall be subject to a civil citation or order as provided in section 27C of chapter 149").

In contrast, however, the civil remedies available under the Overtime Law available to a private complainant are <u>different</u> than those available under the Wage Payment Law. See M.G.L. c. 151 §§ 1B and 20A and M.G.L. c. 149 § 150 (different statutes of limitations and different provisions for obtaining damages and treble damages). Thus the Legislature must have intended these statutes to provide remedies under different situations.

To give meaning to this difference, the Court cannot treat misclassification of an employee as exempt from the Overtime Law as a violation of the Wage Payment Law as well. If this court were to award Plaintiff damages related to its failure to pay overtime under the Wage Payment law, then the Wage Payment Law's more lenient standard for treble damages and the longer statute of limitations would entirely eviscerate the remedy provisions of the Overtime Law. The Overtime Law's remedy provisions and two year statute of limitations would be superfluous – a violation of the Overtime Law would <u>always</u> be a violation of the Wage Payment Law and its more advantageous remedies and longer statute of limitations would apply.

Judge Young recognized this fact in a recent case and refused to allow the plaintiff in that case to use the Wage Payment Law to obtain a recovery denied to him by the Overtime Law's shorter statute of limitations. <u>Mogilevsky v. Bally Total Fitness Corporation</u>, 263 F.Supp.2d 164 (D.Mass. 2003) (Young, C.J.). There, the plaintiff, Boris Mogilevsky, alleged both that that he worked hours in excess of 40 per week for which he received only his regular rate of pay ("straight time pay") and that he worked hours for which he was entirely uncompensated (no straight time pay or overtime pay). <u>See</u> <u>id</u>. Mogilevsky sought damages over a three-year period under the FLSA, the Overtime Law and the Wage Payment Law.

The court awarded damages for overtime pay only for the two year period applicable to the Overtime Law and the FLSA.[4/] In denying the plaintiff recovery for unpaid overtime during the third year, the court stated:

> Here, the Court rules that Mogilevsky is entitled to recover only at the standard rate--not the overtime rate--for any hours for which he received no compensation whatsoever. For those hours in which he was compensated at the standard rate rather than the overtime rate, he is not entitled to the difference. Providing him with compensation for entirely unpaid hours prior to May 18, 1999 [outside the Overtime Law's limitation period] at the overtime rate rather than the standard rate--or with additional compensation for hours that were paid at the standard rather than the overtime rate--would essentially eviscerate the distinction between the two-year statute of limitations for the failure to pay overtime hours at the overtime rate, Mass. Gen. Laws c. 151, § 20A, and the three-year statute of limitations for the failure to pay wages altogether, Mass. Gen. Laws c. 149, § 150 [the Wage Payment Law.]

<u>Id</u>. at 170.[5/]

---

[4/]   The Court found that the violation was not willful and that the FLSA's shorter two-year statute of limitations for non-willful violations applied.

Any result other than that reached in <u>Mogilevsky</u> is inconsistent with the basic doctrines of statutory construction. To read the Wage Payment Law to subsume the Overtime Law's remedies would be tantamount to ignoring the clear message the Legislature sent when it created separate remedy provisions for the two laws. In order to create a "harmonious whole" from the two wage statutes, the Court must read them to apply to different wrongs.

The Legislature has provided its remedy for payment of an employee as an exempt salaried employee and concomitant failure to pay overtime – under the Overtime Law.[6/] The Wage Payment Law is not meant to provide additional redress for the same violation. Thus, Plaintiff's attempt to bypass the remedy and statute of limitations provisions in the Overtime Law simply is not sanctioned either by the statute or applicable case law.

Since Count III could be defeated on a motion to dismiss, this Court should deny the Plaintiff's Motion. See <u>Rauch v. United Instruments, Inc.</u>, 405 F.Supp. 435 (D.C.Pa.1975) ("To avoid engaging in a useless act, the court must measure a proposed amended complaint in terms of its ability to withstand a motion to dismiss").

---

[5/]  In the end, the only award the plaintiff received under the Wage Payment Act related to the defendant's failure to pay him accrued vacation time. <u>Id.</u> at 171, 172.

[6/]  This is not to suggest that a plaintiff could never be awarded overtime pay under the Wage Payment Law. Where an employee expects to receive overtime based on his wage arrangement with the employer and yet that payment is delayed, the plaintiff certainly would have a claim under the Wage Payment Law. See, e.g., <u>Parow v. Howard</u>, 17 Mass. L. Rptr. 149, 2003 WL 23163114 (Mass. Super. 2003).

## CONCLUSION

For the foregoing reasons, Arbella respectfully requests that this Court deny Plaintiff's Motion for Leave to File Second Amended Complaint.

## REQUEST FOR A HEARING

If the Court believes it would assist it in the resolution of this matter, Arbella respectfully requests a hearing on Plaintiff's Motion.

Respectfully submitted,

**ARBELLA SERVICE CORPORATION**

By its attorneys,

Roberta Fitzpatrick, BBO #550470
Carolyn A. Wiesenhahn, BBO #641596
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Dated: December 20, 2004

## **CERTIFICATE OF SERVICE**

    I, Carolyn A. Wiesenhahn, hereby certify that I have on this 20th day of December, 2004, served a copy of the foregoing *Arbella Service Company's Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint,* by delivering a copy thereof by hand to:

Thomas V. Urmy, Jr., Esquire
Shapiro Haber & Urmy, LLP
53 State Street
Boston, MA 02109

                                                   Carolyn A. Wiesenhahn

LIT 1493861v2

17 Mass.L.Rptr. 149, 2003 WL 23163114 (Mass.Super.)
Superior Court of Massachusetts.
Brian PAROW, Individually and on behalf of a class of persons similarly situated
v.
Richard HOWARD, in his official capacity as Mayor of the City of Malden et al.
No. 021403A.
Nov. 12, 2003.

MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

GRAHAM, J.
*1 Plaintiff, Brian Parow, individually and on behalf of the uniformed fire fighters in the City of Malden (City) filed this class action alleging that the defendants, Richard Howard and the City (sometimes referred to hereinafter as the Defendants), have instituted a policy of delaying payments of overtime to the Plaintiffs in violation of G.L.c. 149, Sec. 148, thus entitling them to damages and injunctive relief. The Defendants claim that any damages suffered by the affected firefighters are *de minimis,* and deny the claim that the Defendants adopted a longstanding policy of violating G.L.c. 148. After hearing, this Court grants summary judgment in favor of the Plaintiffs.

FACTS

The facts as viewed in the light most favorable to the nonmoving Defendants, as contained in the summary judgment record, are as follows.

1. Plaintiff, Brian Parow, is a uniformed fire fighter for the Defendant, City. He has worked numerous overtime shifts for the City over the three years preceding the filing of this lawsuit on April 3, 2002. He brings this case individually and on behalf of a class of persons similarly situated. The class consists of Malden fire fighters and officers who have worked overtime shifts and who have not been paid wages for their overtime in a timely fashion. The class meets all of the requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.

2. Defendant City is a duly incorporated municipality of approximately 50,000 residents within the Commonwealth of Massachusetts, and is responsible for maintaining the Fire Department. During the period relevant to Plaintiffs' complaint, the City employed approximately 120 firefighters who were represented by IAFF Local 902 (Union). Defendant Richard Howard is the duly-elected Mayor of the City. In that capacity he is responsible for the overall administration of the Fire Department and, in particular, for requesting sufficient appropriations to pay for overtime worked by Plaintiffs.

3. Plaintiffs generally work one of two work schedules: (1) officers and fire fighters assigned to fire stations work two separate twenty-four-hour shifts every eight days; and (2) officers and fire fighters assigned to fire prevention positions work four or five shifts per week. Plaintiffs' pay period runs from Sunday through Saturday; they are paid on the Thursday following the pay period.

In compliance with G.L.c. 48, §§ 58C and 58D, City fire fighters are compensated overtime pay at a rate of one and one-half times their regular rate for work in excess of 42 hours in a week. Each plaintiff received earned overtime compensation during the course of his employment, and each fire fighter was compensated at the stated overtime rate.

4. As of the date of the Plaintiffs' Complaint, no fire fighter in the City was due overtime pay for the period of April 2, 1999 through April 3, 2002. However, on hundreds of occasions during the three years preceding the filing of the instant lawsuit, the City did not pay Plaintiffs for the overtime worked within seven days after the pay period during which the Plaintiffs worked overtime. In most cases, the delayed overtime payments represent four (4) to twelve (12) hours per employee.

*2 In some cases, members of the class of Plaintiffs waited three or more months before receiving payment for overtime work. Defendants acknowledge that a limited number of fire fighters experienced delay in receiving overtime compensation, but note that all overtime due was paid by the time the Plaintiffs filed this action.

5. Despite repeated demands made upon the Defendants by the Union, on numerous occasions during the period following the filing of the Complaint at bar, the City failed to pay Plaintiffs for their overtime within seven days after the pay period during which they worked the overtime. A detailed summary of the delays in payment of overtime compensation suffered by the Plaintiffs is set forth in the uncontested affidavit of Plaintiff, dated March 5, 2003 which is incorporated herein by reference.

DISCUSSION

A. Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 465 (1995); *Community Nat'l Bank v. Dawes*, 369 Mass. 550, 553 (1976); *Massachusetts Mun. Wholesale Elec. Co. v. Springfield*, 49 Mass.App.Ct. 108, 109 (2000).

B. Payment of Earned Overtime Under G.L.c. 149, § 148.

General Laws c. 48, § 58D, provides that fire fighters, including Plaintiffs, may not be required to work more than forty-two (42) hours per week. Moreover, G.L.c. 48, § 58C provides that any fire fighter who in fact works more than 42 hours on average in a week shall be paid overtime for such work, at a time not less than one and one-half his basic hourly rate of compensation, unless, in the alternative, such individual elects to be given time off in lieu of additional pay. Hence, Massachusetts law requires public employers to pay fire fighters overtime pay (one and one-half the basic hourly rate) for all hours of work in excess of 42 hours in a week.

Furthermore, G.L.c. 149, § 148 provides, in relevant part, that an employee who has earned wages must be paid such wages within seven (7) days of the termination of the pay period during which such wages were earned.

Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to *within seven days of termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week,* or in the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of such period, pay the wages earned by such casual employee during such period, but any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; ...

*3 G.L.c. 149, § 148 (emphasis added).

The Legislature enacted Section 148 to limit "the interval between the completion of a work week and the payday on which the wages earned in that week will be paid." *American Mutual Liab. Ins. Co. v. Comm'r of Labor & Industries*, 340 Mass. 144, 145 (1959). The statute sought "primarily to prevent unreasonable *detention* of wages ... The cure which the Legislature prescribed for the evil noted was to require regular and frequent payment ... Payment long in arrears could mean ... dissipation on payday of a large part of the accumulation sums by irresponsible employees with consequent adverse effect on family and community. The statutory remedy met this possible evil." *Id.* at 147 (emphasis in original) (citations omitted). The Legislature deemed it important that employees receive wages regularly and promptly after they had been earned. *Mutual Loan Co. v. Martell*, 200 Mass. 482, 485 (1909).

Defendants argue that the purpose of the statute is to protect employees from themselves, not to function as a procedural mechanism by which the Plaintiffs may benefit without suffering tangible harm. They further argue, and this Court concludes, that the Plaintiffs have failed to prove that Defendants deprived fire fighters of overtime pay pursuant to a "long standing policy" that violated G.L.c. 149, § 148. Several hundred fire fighters were paid on time, and there is no evidence presented that the City regularly issued overtime payments to fire fighters consisting of excessively large lump sum payments. Finally, the Defendants argue that because (1) the delayed overtime payments were small (mainly consisting of four (4) to twelve (12) hours per fire fighter) and (2) all fire fighters ultimately received any compensation due them, the Defendants acted reasonably and the fire fighters' damages are minimal.

However, the clear intent of the statute is to require the timely payment of wages, *American Mut. Liab. Ins. Co.*, 340 Mass. at 147, and the Defendants acknowledge that they have repeatedly failed to do so with respect to Plaintiffs' overtime wages. Section 150 of G.L.c. 149 sets forth a limited number of defenses that an employer may raise to avoid liability thereunder. Late payment is not among those defenses. Defendants could only avoid liability by showing that they had actually paid Plaintiffs' earned overtime wages in the time permitted under Section 148. The Defendants cannot meet this standard.

Moreover, there is no support, factually or legally, for the Defendants' *de minimis* argument. First, a failure to pay Plaintiffs' earned overtime wages for months is never *de minimis*. Second, the statute does not provide such a defense. Rather, the statute mandates prompt payment of wages in the time permitted, regardless of the amount.

In the case at bar, Defendants have consistently violated G.L.c. 149, § 148, by failing to pay Plaintiffs

their earned overtime wages within seven days of the termination of the pay period in which they worked the overtime. Moreover, Defendants have knowingly violated the statute. Even after the case at bar was filed, Defendants failed to pay the Plaintiffs for overtime worked within the period required by statute.

C. DAMAGES

*4 Plaintiffs contend that pursuant to G.L.c. 149, § 150, a Court finding of a violation of Section 148 mandates an award of treble damages plus attorneys fees and costs. Defendants argue that whether such damages are appropriate is determined by the court's discretion. Pursuant to G.L.c. 149, § 150, Plaintiffs claiming to be aggrieved by a violation of § 148 may prosecute an action for damages, including an award of treble damages, "for any loss of wages and other benefits" and attorneys fees and costs:

Any employee claiming to be aggrieved by a violation of section one hundred and forty-eight ... may ... institute and prosecute ... a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of the litigation and reasonable attorney fees.

Indeed, some Courts have interpreted the language in § 150 to *require* the award of treble damages, attorneys fees and costs, See *Gibbs v. Archie*, 2002 Mass.App.Div. 205 (2000); *Bollen v. Camp Kingsmont*, 2000 Mass.App.Div. 56 (2000); *Chiapetta v. Lyons*, 1999 Mass.App.Div. 276 (1999). However, this Court determines that whether such an award is mandatory or discretionary need not be addressed here. That issue is irrelevant because this Court concludes that, even if discretionary, treble damages are warranted. Although the actions of the Defendants cannot be described as outrageous and stemming from an evil motive, their actions were willfully indifferent to the Plaintiffs' rights.

This Court determines that damages are to be awarded to the Plaintiffs based on the interest (calculated at a rate of twelve percent per annum) earned on the overtime wages for the time period beginning when the wages were unlawfully withheld until payment was received. G.L.c. 231, § 6C. This interest is to be trebled pursuant to G.L.c. 149, § 150. Plaintiffs are also awarded the costs of litigation and reasonable attorney fees, the amount of which must be determined at a subsequent hearing.

D. Injunctive Relief

In violation of G.L.c. 149, § 148, Defendants have failed to pay Plaintiffs, even after this lawsuit was instituted, for earned overtime wages within seven days after the pay period in which the Plaintiffs earned the overtime. Accordingly, this Court enters an order permanently enjoining Defendants from continuing this unlawful conduct.

CONCLUSION AND ORDER

For the foregoing reasons, this Court ORDERS that Plaintiffs' motion for summary judgment is ALLOWED and enters an award for:
(a) Permanent injunctive relief, barring Defendants from continuing to violate G.L.c. 149, § 148;
(b) treble damages on the amount of all interest (calculated at a rate of twelve percent per annum) earned on the overtime wages for the time period beginning when the wages were unlawfully withheld until payment was received; and
*5 (c) reasonable attorneys fees and costs and prejudgment interest.

Mass.Super.,2003.
Parow v. Howard
17 Mass.L.Rptr. 149, 2003 WL 23163114 (Mass.Super.)
END OF DOCUMENT

Copr. (C) 2004 West. No Claim to Orig. U.S. Govt. Works.